UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAWSON VALLEE | * | NO. 2:20-cv-01571 |
| | * | |
| Plaintiff | * | JUDGE: SARAH S. VANCE |
| | * | |
| VERSUS | * | MAG.: KAREN WELLS ROBY |
| | * | |
| CROWN EQUIPMENT CORPORATION OF | * | SECTION: "R" (4) |
| OHIO d/b/a CROWN LIFT TRUCKS, GEORGE | * | |
| BORDELON, AND ADAM GIROIR | * | |
| | * | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CROWN EQUIPMENT CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON REASONABLY ANTICIPATED USE**

NOW INTO COURT, comes Defendant, Crown Equipment Corporation ("Crown"), which submits this Memorandum of Law in support of its Motion for Summary Judgment on Reasonably Anticipated Use. The Louisiana Products Liability Act, La. R.S. 9:2800.51, *et. seq.* ("LPLA") sets forth the exclusive theories of liability for manufacturers for damage caused by their products. To recover under the LPLA, the claimant's damage must arise from a *reasonably anticipated use* of the product. La. R.S. 9:2800.54 (emphasis added). Crown is entitled to summary judgment because Plaintiff's use of the subject product in contravention of the training he received and in direct violation of Crown's instructions and warnings cannot be considered a *reasonably anticipated use* under the LPLA. Accordingly, Crown is entitled to dismissal of Plaintiff's claims as a matter of law under Federal Rule of Civil Procedure 56.

00804149

## I.  FACTS AND PROCEDURAL BACKGROUND RELEVANT TO THIS MOTION

### A.  The Crown RM6000 Lift Truck

On May 3, 2019, Plaintiff, Dawson Vallee, was injured while operating a Crown RM6000 stand-up lift truck while employed by Republic National Distribution Company ("Republic") at its warehouse facilities in Jefferson, Louisiana.[1]  Representative photographs of the model Crown RM6000 lift truck he was operating appear below:



---

[1]  Rec. Doc. 1-2, p. 1.

The Crown RM6000 lift truck is designed to allow the safe and efficient movement of palletized materials in warehouses and other facilities. Unlike sit-down forklifts where the operator is seated while operating the vehicle, stand-up rider lift trucks are designed with open compartments to allow operators to quickly and easily get on and off the truck while performing their day-to-day activities. The Crown RM6000 incorporates Crown's side stance design which permits the lift truck to be operated in either forward or reverse while providing maximum visibility for the operator:[2]



---

[2] Exhibit A, Crown RM6000 Operator Manual, p. 8.

00804149 3

The design of the RM6000 operator compartment allows for a stable 5-point body-to-truck contact during operation of the truck. Each of these points of contact are easily visualized in the photograph of the operator compartment below:[3]



The operator's two feet (points 1 and 2) are on the operator compartment floor; the operator leans against the padded backrest/cushion (point 3); the operator's right hand (point 4) is on the Multi-Task control handle and the operator's left hand (point 5) is on the Steering Tiller.

---

[3] *Id.* at p. 10.

Movement of the lift truck is accomplished by moving the Multi-Task Handle in the desired direction of travel. The lift truck's design, however, prevents any movement unless both of the operator's feet are in contact with the Floorboard. Specifically, the operator's left foot must be pressing down on the Brake Pedal (1) (thus disengaging the brake) ***and*** his/her right foot must be in contact with the Sensor Pad (2) before any movement of the lift truck can occur. Once the lift truck is in motion, the operator activates the brake by simply raising his/her left heel.[4] Crown thus anticipates that in the day-to-day use of lift truck, the operator's feet will always be either touching and/or in close proximity to the Floorboard and that his/her feet will always remain inside of the operator compartment.

The United States Occupational Safety and Health Administration ("OSHA") has required that lift truck operators be fully trained and certified in their safe operation before being allowed to operate such equipment. An integral part of that training is designed to ensure that operators are completely familiar with the warnings and instructions for use which accompany the lift truck. The warnings for the Crown RM6000 include the following:[5]

---

[4] The lift truck can also be slowed and brought to a stop through an operation called "plugging" in which the operator simply pulls the Multi-Task Handle in the opposite direction of travel. *See* Exhibit A at pp. 23-24.
[5] Exhibit A at pp. 1, 3, 22.

## ⚠ WARNING

**It's the law, you must be trained and certified to operate this truck.** (OSHA § 1910.178, Rev. 1999)

You or others around you can be seriously injured or even killed if you don't use this truck correctly.

Read and obey all warnings and instructions in this Manual* and on the truck.

Head, arms, hands, legs or feet outside the operator area can be pinned or crushed whenever the truck is moving. Stay within the operator area and **stop the truck completely before getting off.**

**However**, tipovers and falls from docks can cause serious injury or even death. **Immediately exit and move away from the truck in these emergencies.**

You can be trapped or crushed by driving the operator area under racks or other objects. **Look where you are going.**

## ⚠ Know the Hazards




**DRIVE CAREFULLY**

- Keep your hands on the controls and feet on the pedals/pad. Keep your entire body in the operator area.

- Never stick a foot or any part of your body outside the operator area, no matter how slow the truck is moving. You cannot stop 3630 kg or *(8000 pounds)* with any part of your body. A foot or hand caught between the truck and a fixed object will be crushed or even cut off.

- Stay away from the edge of docks and ramps. Make sure dockboards are secure. Check that trailer wheels are chocked. You could be seriously injured or even killed in a fall from a dock or dockboard.

- Keep your truck under control at all times. Drive at a speed that allows you to stop safely. Be even more careful on slippery or uneven surfaces. Do not drive over objects on the floor.

00804149                                                    6




The RM6000 Operator Manual also included the following Instructions for Use under the heading "**Be a Safe Driver:**"[6]



---

[6] *Id.* at p. 34.

00804149                                   7

As per OSHA requirements, Dawson Vallee was provided on-the-job training by Republic on how to safely operate the RM6000.[7] During his training, Mr. Vallee learned how to drive and maneuver the lift truck so that he could maintain full control over it while performing his day-to-day job duties. Mr. Vallee also watched a safety video which explained the importance of keeping his body parts inside of the operator compartment and the potential for serious injury or death if the lift truck was not properly operated.[8] For approximately three months before the subject accident, he used various Crown RM6000 lift trucks in the Republic facility without incident and reported no issues with understanding how to safely operate them.[9]

### B. The Accident Event

On May 3, 2019, Mr. Vallee worked an overnight shift at Republic in which he was involved in picking and loading various products for delivery the following day. He performed the required pre-shift inspection on his assigned Crown RM6000 lift truck and confirmed that there were no operational issues with his lift truck. Mr. Vallee utilized his Crown RM6000 lift truck to perform various job duties and encountered no issues whatsoever in its control or operation prior to his incident.

Immediately before the subject accident occurred, Mr. Vallee had utilized his Crown RM6000 to off-load some empty boxes at a trash compactor located within the Republic facility. After he completed this task, Plaintiff intended to drive the subject lift truck straight down the large aisle adjacent to the compactor, make a right-hand turn, and then park the lift truck in its usual storage location near the rear of the warehouse. However, as Mr. Vallee initiated travel of the lift truck, he lost complete control of its operation including, according to his own testimony,

---

[7] Exhibit B, Deposition of Dawson Vallee, pp. 30-31.
[8] *Id.*
[9] *Id.* at p. 39.

its speed, steering and braking. Mr. Vallee losing control resulted in the lift truck crashing into a stationary post called a "bollard" approximately 20-25 feet from where he initiated travel. A photograph of the subject bollard is shown below:[10]



Before making contact with the bollard, Mr. Vallee allowed his left foot to leave the confines of the operator compartment where it was crushed between the bollard and the side of the lift truck.[11] The Plaintiff has testified that he has no memory of how his leg came outside of the operator compartment.[12]  A photograph in which the Plaintiff designated the precise area where his foot was crushed against the side of the lift truck appears below:[13]

**[PHOTO APPEARS ON FOLLOWING PAGE]**

---

[10] *See* Exhibit 3 to Exhibit B, Deposition of Dawson Vallee.
[11] Rec. Doc. 1-2, ¶ II.
[12] Exhibit B at p. 79.
[13] *See* Exhibit 1-B to Exhibit B, Deposition of Dawson Vallee.



After the collision with the bollard, Mr. Vallee was immediately attended to by his co-employees and then transported by EMS to the hospital for treatment. An inspection of the lift truck by Republic representatives shortly after the accident revealed no issues with steering, braking, plugging, or operation and Republic returned the RM6000 to normal use in the warehouse without any repairs being made.[14] In the Accident Report prepared by Republic after the incident it described "**What Happened?**" as: "*Employee entered a reach truck and attempted to drive off too quickly. Foot became caught between equipment and a bollard.*"[15] The Report further describes "**WHAT CAUSED OR ALLOWED THIS INCIDENT TO HAPPEN?**" as "*[a]ssociate was driving too fast as he attempted to make a turn and lost control of the stand-up reach truck. The angle of steer was too great for the travel speed. – Operator's failure to obey forklift safe work practices.*"[16] Unfortunately, the extent of the injuries sustained to the Plaintiff's foot ultimately resulted in the amputation of his left leg below the knee.

---

[14] Exhibit C, Deposition of Donald Raziano, pp. 21-23.
[15] Exhibit D, Republic Accident Report, p. 4.
[16] *Id.* at p. 5.

### C. Relevant Procedural History

On May 1, 2020, Mr. Vallee initiated this action in the 24th Judicial District Court for the Parish of Jefferson, initially suing Crown and two Louisiana-based Crown employees.[17] Plaintiff asserted product liability claims against Crown:

    a. Designing and manufacturing a defective forklift including its instrumentalities and devices that caused shaking and loss of control.
    b. Designing and manufacturing a defective forklift, including its instrumentalities and devices that failed to stip (sic) the loss of control forklift event described above.
    c. Failing to design and manufacture a forklift with safety measures including a safety door to prevent extensions of lower extremities beyond the lift during loss of control events as well as safety belts/harnesses to prevent extension of lower extremities beyond the lift during loss of control events.
    d. Any and all acts of negligence including any and all other breaches of duty which may be proved at trial.[18]

Plaintiff's claims against the two Crown employees were based on allegations of improper maintenance of the lift truck.[19] On May 29, 2020, Crown timely removed this action to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, specifically alleging that the two Louisiana employees had been improperly joined for the purpose of defeating federal jurisdiction.[20] Plaintiff later voluntarily dismissed his claims against one of the two employees but subsequently filed a Motion to Remand on the basis that he had viable claims against the remaining Louisiana-based employee.[21] On November 10, 2020, this Court issued an Order denying remand and dismissed Plaintiff's claims against that remaining employee.[22]

---

[17] Rec. Doc. 1-2.
[18] *Id.* at ¶ 3.
[19] *Id.* Contemporaneously with this Motion, Crown has also filed a Motion for Summary Judgment which, if granted, will dispose of Plaintiff's negligent maintenance or repair claims entirely as a matter of law.
[20] Rec. Doc. 1, ¶¶ 10-20.
[21] Rec. Doc. 13.
[22] Rec. Doc. 32.

## II.    LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398–99 (5th Cir. 2008). The Court must draw reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985) (quoting 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2738 (2d ed. 1983)).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.*; *see also Little,* 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).

### B. LPLA's Exclusivity and Threshold Requirement

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Plaintiffs may not rely on negligence, strict liability, or breach of express warranty as a viable independent theory of recovery against a manufacturer. *Sistrunk v. Dake Corp.*, 2015 WL 4164910 at *4 (E.D. LA. 2015) (citing *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997)). The elements of a products liability claim under the LPLA are "(1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous;' and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Sistrunk* at *4; *see also Jack v. Alberto– Culver USA, Inc.*, 949 So. 2d 1256, 1258 (La. 2007) (citing La. R.S. 9:280054(A)).

Significantly, "[i]f a plaintiff's damages [do] not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached." *Kampen v. Am. Isuzu Motors, Inc.,* 157 F.3d 306, 309 (5th Cir. 1998). Thus, if a Plaintiff fails to establish that his injury arose out of a *reasonably anticipated use* as defined by the LPLA, the manufacturer is entitled to summary judgment as a matter of law under FRCP 56. *See e.g., Lockart v. Kobe Steel Ltd. Const. Machinery Div.*, 989 F.2d 864 (5th Cir. 1993) (granting summary judgment where essential element of LPLA not established); *Broussard v. Procter & Gamble Co.*, 517 F.3d 767 (5th Cir. 2008) (same).

### C. "Reasonably Anticipated Use" as Defined by the LPLA

Under the LPLA, a manufacturer of a product is only liable for a claimant's damage, "when such damage arose from a reasonably anticipated use of the product." La. R.S. 9:2800.54(A). The LPLA expressly defines *reasonably anticipated use* as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. R.S. 9:2800.53(7). The LPLA thus makes it clear that what constitutes a reasonably anticipated use is an objective standard that is ascertained from the point of view of the manufacturer at the time of manufacture. *Daigle v. Audi of America, Inc.,* 598 So. 2d 1304, 1307 (La. App. 3d Cir. 1991), *writ denied,* 604 So. 2d 1306 (La.1992). This definition effectively discourages the factfinder from using hindsight in determining whether a use was "reasonably foreseeable" or not. *Id*.

As recognized by the Louisiana Supreme Court in *Payne v. Gardner,* 56 So. 3d 229, 231 (La. 2011) the term "reasonably anticipated use*"* is considerably narrower in scope than its pre-LPLA counterpart, "normal use," which included "all reasonably foreseeable uses and misuses of the product." *Id.*; *see also Bloxom v. Bloxom,* 512 So. 2d 839, 841 (La. 1987) (defining "normal use"). Thus, while "normal use" could potentially encompass misuse that was contrary to the manufacturer's instructions, "reasonably anticipated use" cannot include uses that are clearly contrary to a manufacturer's warnings. *Butz v. Lynch*, 99–1070 (La. App. 1 Cir. 6/23/00), 762 So. 2d 1214, 1218, *writ denied*, 00–2660 (La. 11/17/00).

### D. **Plaintiff's Use of the RM6000 in Direct Contravention of his OSHA Mandated Training and Crown's Warnings and Instructions Cannot Be a Reasonably Anticipated Use under the LPLA**

Applying the above precepts to the facts of case at hand, there are three distinct reasons why Plaintiff's use of the RM6000 at the time of his accident cannot be a "reasonably anticipated use"

under the LPLA: (1) Plaintiff sticking his foot outside of the operator compartment is not a "use" as defined by the LPLA, (2) Plaintiff violated his OSHA training and Crown's instructions on safe driving of the lift truck by failing to maintain full control over it, and (3) Plaintiff failed to heed his OSHA training and Crown's warnings and instructions on keeping all body parts inside the operator compartment.

First, Plaintiff's action of sticking his foot outside of the operator compartment should not be considered a "use" of the product under the LPLA. In *Kampen v. Am. Isuzu Motors, Inc.*, the Fifth Circuit recognized that "lines must be drawn between those actions of a plaintiff which will and will not constitute "use" of a product." 157 F.3d 306, 311 (5th Cir. 1998). In *Kampen*, the plaintiff was injured when a factory supplied jack gave way while he was underneath his vehicle. *Id.* After suit was commenced, a motion for summary judgment was brought by the vehicle manufacturer based, in part, on the contention that the plaintiff's use of the jack was not a "reasonably anticipated use" under the LPLA. *Id.* at 308. Summary judgment was granted by the district court but reversed on appeal, *Kampen v. American Isuzu Motors, Inc.*, 119 F. 3d 1193 (5th Cir. 1997). On rehearing *en banc,* however, the Fifth Circuit reinstated the district court's judgment. *Kampen*, 157 F. 3d at 318. In doing so, it began by undertaking a detailed analysis of whether plaintiff's conduct in using the jack to access the underside of his vehicle constituted a "use" of the jack. *Id.* at 310-12. In answering this question in the affirmative, the Court reasoned that the plaintiff's "use" of the jack did not end once he jacked the car up but that he continued to use the jack "*by relying on the jack to hold the car in its elevated position*." *Id.* at 311 (italics in original). Given this reliance, the *Kampen* Court concluded that the plaintiff's "use" should be defined by a "level of generality" which included his negligent conduct. *Id.* at 311-12.[23]

---

[23] Significantly, the *en banc* panel in *Kampen* ultimately concluded that even if the plaintiff's conduct was encompassed with the "use" of the jack, his actions in placing his body underneath the vehicle in direct contravention

Here, however, Mr. Vallee's conduct in sticking his left foot outside of the operator compartment had nothing to do with a "use" of the lift truck. Unlike in *Kampen*, where the use of the jack furthered the plaintiff's goal of obtaining access to the underside of his vehicle, sticking a foot outside of the operator compartment of the lift truck did not further any objective in performing Plaintiff's job duties. Again, unlike *Kampen*, Mr. Vallee was not "relying" on the lift truck when he stuck his foot outside of the operator compartment. Thus, Plaintiff was not engaged in any "use" of the product as envisioned by the LPLA. For this reason alone, Crown is entitled to summary judgment as a matter of law under FRCP 56.

Second, it is undisputed that Plaintiff's OSHA mandated training emphasized the importance of maintaining full control over the lift truck at all times. Mr. Vallee's training included how the lift truck's controls functioned, how to turn, how to look forward and backward, how to honk his horn, and how to maintain proper control of the truck.[24] He watched a training video which emphasized the potential for serious injury or death if the truck was not properly operated.[25] This training was fully consistent with Crown's warnings which also made it clear to any operator of the RM6000 that he/she should always **"[k]eep [the] truck under control at all times"** and **"[d]rive at a speed that allows you to stop safely."**[26] Crown's instructions on how to "**Be a Safe Driver**" further specifically told the operator that he/she should **"DRIVE CAUTIOUSLY, BE ALERT," "[l]ook where you are going before you change direction of travel"** and **"[s]ee that you have room to drive and turn**."[27]

---

of direct and explicit warnings to the contrary was not a "reasonably anticipated" use under the LPLA and thus summary judgment was warranted. *Id.* at 318.
[24]   Exhibit B at pp. 31-32.
[25]   *Id.*
[26]   Exhibit A at p. 1.
[27]   *Id.* at p. 34.

There is no question that Plaintiff failed to maintain proper control over the RM6000 lift truck he was operating. He indisputably did not drive his RM6000 cautiously and at a speed where he could stop the lift truck safely. He also failed to stay alert so that he would not run into any objects while operating the truck. Additionally, there is no competent evidence that anything impaired Mr. Vallee's ability to control the acceleration, braking, or steering of the lift truck.

Simply put, Crown does not "reasonably anticipate" that a lift truck operator will fail to maintain control of the lift truck when there are no operational issues and allow it to collide with a stationary object. Republic's post-incident inspection of the lift truck showed there were no operational issues with the lift truck and it was returned to service the same day without any repairs needing to be completed.[28] Mr. Vallee's failure to operate his truck safely directly violated his OSHA mandated training as well as numerous warnings and instructions provided by Crown. For this reason alone, his use of the lift truck is not something that could have been "reasonably anticipated" by Crown, and Crown is entitled to summary judgment as a matter of law under FRCP 56.

Finally, even if this Court were to construe Mr. Vallee sticking his foot out a "use" as defined by the LPLA and that Mr. Vallee's failure to maintain control over the lift truck does not entitle Crown to summary judgment, there are further reasons why Plaintiff's conduct is not something that should have been "reasonably anticipated" by Crown. By sticking his foot outside the confines of the operator compartment, Mr. Vallee again failed to follow his OSHA-mandated training as well as the numerous warnings and instructions provided by Crown which made it clear that Mr. Vallee had to maintain his feet inside of the operator compartment:

---

[28] Exhibit D at pp. 21-23.

- "**WARNING - Head, arms, hands, legs or feet outside the operator area can be pinned or crushed whenever the truck is moving. Stay within the operator area and stop the truck completely before getting off.**"[29]

- "**Know the Hazards – DRIVE CAREFULLY - Keep your hands on the controls and feet on the pedals/pad. Keep your entire body in the operator area.**"[30]

- "**Know the Hazards - Never stick a foot or any part of your body outside the operator area, no matter how slow the truck is moving. You cannot stop 3630 kg or** *(8000 pounds)* **with any part of your body. A foot or hand caught between the truck and a fixed object will be crushed or even cut off.**"[31]

- "**Know the Hazards -- WATCH YOUR FEET – Keep your feet inside the truck and on the pedals/pad at all times. This truck weighs about 3630 kg (or 8000 pounds) without a load on the forks. You cannot stop or even slow down that much weight with your foot or any part of your body, no matter how slow the truck is moving.**"[32]

- "**Know the Hazards - A foot or hand caught between the truck and a wall, post, or any fixed object will be crushed or even cut off.**"[33]

Crown's instructions on how to "**Be a Safe Driver**" further specifically told the operator that he/she should "**Never stick a foot or any part of your body outside the operator area, no matter how slow the truck is moving. You cannot stop 3630 kg (or** *8000 pounds*) **with any part of your body. A foot or hand caught between the truck and a fixed object will be crushed or even cut off.**"[34] Many of these warnings and instructions were accompanied by pictograms to

---

[29] Exhibit A at p. 1.
[30] *Id*.
[31] *Id*.
[32] *Id*. at p. 22.
[33] *Id*.
[34] *Id*. at p. 34.

graphically illustrate the risk of injury the operator would encounter if he/she failed to heed the admonitions Crown provided:

[35]

Instead, before making contact with the bollard, Mr. Vallee extended his foot outside the safe confines of the operator compartment of the RM6000 where it was tragically crushed between the side of the lift truck and the bollard.

"When a manufacturer expressly warns against using a product in a certain way in clear and direct language accompanied by an easy-to-understand pictogram, it is expected that an ordinary consumer would not use the product in contravention of the express warning." *Kampen,* 157 F.3d at 313 (citing *Lockart v. Kobe Steel Ltd.,* 989 F.2d 864, 867 (5th Cir. 1993)). Thus, "reasonably anticipated use" cannot include uses that are clearly contrary to a manufacturer's warnings. *Butz v. Lynch*, 99–1070 (La. App. 1 Cir. 6/23/00), 762 So. 2d 1214, 1218, *writ denied*, 00–2660 (La. 11/17/00). Because it is undisputed that Plaintiff directly contravened Crown's warnings, his use was not a *reasonably anticipated use* under the LPLA.

---

[35] Exhibit A at pp. 3, 22.

### III. CONCLUSION

For the reasons set forth above, this Court should find that Plaintiff's injuries did not arise out of a *reasonably anticipated use* as required by the LPLA. La. R.S. 9:2800.54(A). Because this threshold element of liability cannot be established, Crown is entitled to summary judgment as a matter of law under FRCP 56 dismissing Plaintiff's claims with prejudice.

Respectfully Submitted:

**IRWIN FRITCHIE URQUHART & MOORE LLC**

BY: */s/ Kelly E. Brilleaux*
QUENTIN F. URQUHART, JR. (#14475)
KELLY E. BRILLEAUX (#33030)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
Email: qurquhart@irwinllc.com
kbrilleaux@irwinllc.com

**MCDONALD TOOLE WIGGINS, P.A.**
MICHAEL CORRENTI (*pro hac vice*)
PHILIP KEGLER (*pro hac vice*)
111 N. Magnolia Ave, Suite 1200
Orlando, FL 32801 Telephone: (407) 246-1800
Facsimile: (407) 246-1895
Email: mcorrenti@mtwlegal.com
pkegler@mtwlegal.com

C*ounsel for Crown Equipment Corporation*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on the 20th day of October, 2021.

*/s/ Kelly E. Brilleaux*