UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAWSON VALLEE | * | NO. 2:20-CV-01571 |
| | * | |
| PLAINTIFF, | * | JUDGE: SARAH S. VANCE |
| | * | |
| VERSUS | * | MAG. JUDGE: KAREN WELLS ROBY |
| | * | |
| CROWN EQUIPMENT CORPORATION OF | * | SECTION: "R" (4) |
| OHIO D/B/A CROWN LIFT TRUCKS, GEORGE | * | |
| BORDELON, AND ADAM GIROIR | * | |
| | * | |
| DEFENDANTS | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF CROWN EQUIPMENT CORPORATION'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S DESIGN DEFECT CLAIMS

NOW INTO COURT, comes Defendant, Crown Equipment Corporation ("Crown"), which submits this Memorandum in Support of its Alternative Motion for Summary Judgment on Plaintiff's Design Defect Claims.[1]

## I.    SUMMARY OF THE ARGUMENT

The Louisiana Products Liability Act, La. R.S. 9:2800.51, *et. seq.* ("LPLA") sets forth the exclusive theories of liability for manufacturers for damage caused by their products.  Pursuant to the LPLA:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> > (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
> > (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the

---

[1] Crown has previously filed a Motion for Summary Judgment on Reasonably Anticipated Use (Rec. Doc. 110), as well as a Motion for Summary Judgment on Plaintiff's Claims for "Negligence" and/or "Negligent Maintenance and Repair" (Rec. Doc. 111). If those Motions are granted, then this motion on Plaintiff's "Design Defect" claims is moot.

> manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. R.S. 9:2800.56.  As detailed below, Crown is entitled to summary judgment because Plaintiff cannot meet his burden of establishing that the product at issue is unreasonably dangerous in design pursuant to any of the criteria outlined in La. R.S. 9:2800.56.

   **First,** Crown will be filing contemporaneously with this Motion for Summary Judgment Motions in Limine pursuant to Federal Rule of Evidence 702 seeking to totally exclude and/or significantly limit the testimony of Plaintiff's proffered liability experts on the grounds that they are either unqualified and/or their opinions do not meet the standards of relevance and reliability set forth in Rule 702 and by the United States Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93, 113 S. Ct. 2786 (1993).  Crown anticipates that its Motions in Limine will be granted, leaving the Plaintiff without the requisite expert testimony to support his LPLA design defect claims.  For this reason alone, Crown will be entitled to summary judgment dismissing Plaintiff's claims.

   **Second**, even if Crown's Rule 702 Motions are not fully granted by this Court, Plaintiff's claim still fails because he cannot satisfy any of the requirements for defective design as outlined in La. R.S. 9:2800.56.  In particular:

- Plaintiff cannot maintain his burden under La. R.S. 9:2800.56(1) which requires the identification of an alternative design for the product.  Instead, all that Plaintiff's experts have done is to suggest potential *concepts* for generically adding a door to stand-up lift trucks without doing any drawings, specifications, calculations, testing, or modeling to demonstrate how any such door would be incorporated into the specific product at issue in

this case.  Plaintiff's experts have not even offered an opinion as to what type of specific door should be added to the RM6000 (i.e. latching door, spring-loaded door, etc.), let alone perform any testing to analyze and assess the risks presented by these different door concepts. Such speculative concepts do not meet the LPLA's requirement that there be proof of a specific alternative design for ***the product***. La. R.S. 9:2800.56(1).

- Even if this Court finds that Plaintiff has identified a specific alternative design for the product at issue, he has also failed to provide any evidence that the implementation of any such alternative design was "capable of preventing the claimant's damage" as required by La.-R.S. 9:2800.56(1).  To sustain this burden, the Plaintiff would first have to identify a specific alternative design for the subject product (which he has not done) and then have his experts engage in appropriate *testing* of that alternative design to demonstrate how it was capable of preventing the injury at issue.  Because no such testing has been performed, Plaintiff's experts cannot exclude the possibility that the subject injury might have occurred even with implementation of the suggested alternative design.  Thus, Plaintiff cannot meet his LPLA burden of proving that any proposed alternative design was ***capable of preventing*** the subject injury. La. R.S. 9:2800.56(1).

- Finally, even if this Court finds that Plaintiff has identified a specific alternative design that was capable of preventing his alleged damage, his claim for defective design still fails because he has not provided sufficient evidence to support the *risk-utility analysis* required by La. R.S. 9:2800.56(2).  To meet this burden, the Plaintiff must initially demonstrate that his experts have specifically considered the "likelihood that the product's design would cause the claimant's damage" and the "gravity of that damage." La. R.S. 9:2800.56(2).  In considering the *likelihood of the harm*, the LPLA expressly mandates that "[a]n adequate

warning about a product shall be considered. . ." La. R.S. 9:2800.56(2).  Here, however, none of Plaintiff's experts have given any consideration to the impact of Crown's warnings on the likelihood of damage.  Under those circumstances, ***a valid risk-utility analysis cannot be performed***, and the Plaintiff cannot meet his burden of proving a design defect under the LPLA.

- Further, the risk-utility analysis required by La. R.S. 9:2800.56(2) requires the Plaintiff to demonstrate that the burdens imposed in adopting any proposed alternative design and any adverse impact of that design on the product's utility are outweighed by the likelihood and gravity of the damage.  Plaintiff's experts have failed to engage in any serious analysis of the impact that the addition of a door might have on the subject product's *fundamental purpose and overall utility*.  For this additional reason, ***a valid risk-utility analysis cannot be performed***, and the Plaintiff cannot meet his burden of proving a design defect under the LPLA.

For all of the above reasons, Plaintiff cannot succeed on his design defect claims under the LPLA and Crown is entitled to summary judgment pursuant to FRCP 56 dismissing same as a matter of law.

## II.     FACTS AND PROCEDURAL BACKGROUND RELEVANT TO THIS MOTION[2]

On May 3, 2019, Plaintiff, Dawson Vallee, was injured while operating a Crown RM6000 stand-up lift truck while employed by Republic National Distribution Company ("Republic") at its warehouse facilities in Jefferson, Louisiana.[3]  The Crown RM6000 stand-up lift truck is designed to allow the safe and efficient movement of palletized materials in warehouses and other

---

[2] A more complete recitation of the background facts is contained in Crown's Memorandum in Support of its Motion for Summary Judgment on Reasonably Anticipated Use (Rec. Doc. XX).

[3] Rec. Doc. 1-2, p. 1.

facilities.   Unlike sit-down forklifts where the operator is seated while operating the vehicle, stand-up lift trucks have an *open compartment* which is designed to allow operators to quickly and easily get on and off the truck while performing their day-to-day activities.  A representative photograph of the RM6000 appears below:[4]



Moreover, the open compartment allows operators to immediately exit the truck and avoid a potentially fatal injury in the event of a tip over or off-dock accident as recommended by OSHA

---

[4] *See* Exhibit A, Crown RM6000 Operator Manual, p. 8.

and the National Institute for Occupational Safety and Health ("NIOSH").[5]  For this reason, there is not a single manufacturer in the world that designs a stand-up rider lift truck with a door as standard equipment.

Before being allowed to operate the RM6000, Dawson Vallee was provided on-the-job training by Republic on how to safely operate the lift truck.[6]  This included watching a safety video which explained the importance of keeping his body parts inside of the operator compartment and the potential for serious injury or death if the lift truck was not properly operated.[7]  As part of that training, Mr. Vallee was also to familiarize himself with the warnings and instructions for use which include the following relevant to this motion:

- **"WARNING - Head, arms, hands, legs or feet outside the operator area can be pinned or crushed whenever the truck is moving.  Stay within the operator area and stop the truck completely before getting off."**[8]
- "**Know the Hazards – DRIVE CAREFULLY - Keep your hands on the controls and feet on the pedals/pad.  Keep your entire body in the operator area.**"[9]
- **"Know the Hazards - Never stick a foot or any part of your body outside the operator area, no matter how slow the truck is moving.  You cannot stop 3630 kg or** *(8000 pounds)* **with any part of your body.  A foot or hand caught between the truck and a fixed object will be crushed or even cut off."**[10]
- **"Know the Hazards -- WATCH YOUR FEET – Keep your feet inside the truck and on the pedals/pad at all times.  This truck weighs about 3630 kg (or 8000 pounds) without a load on the forks.  You cannot stop or even slow down that much weight with your foot or any part of your body, no matter how slow the truck is moving."**[11]

---

[5] 2001 NIOSH Alert, DHHS Pub. #2001-109, at 1 (NIOSH June 2001); 63 Fed. Reg. 66245; 63 Fed. Reg. 66242, 66249.
[6] The United States Occupational Safety and Health Administration ("OSHA") requires that lift truck operators be fully trained and certified before being allowed to operate such equipment. (OSHA § 1910.178, Rev. 1999).
[7] Exhibit B, Deposition of Dawson Vallee, p. 31.
[8] Exhibit A at p. 1.
[9] *Id.*
[10] *Id.*
[11] *Id.* at p. 22.

- **"Know the Hazards - A foot or hand caught between the truck and a wall, post, or any fixed object will be crushed or even cut off."**[12]

For approximately three months after completing his training, the Plaintiff operated Crown RM6000 lift trucks at Republic and reported no issues with understanding how to safely operate them.  On May 3, 2019, Mr. Vallee performed a pre-shift inspection on his assigned RM6000 and then successfully used the lift truck throughout his shift without any operational issues.[13]  After using the truck to off-load some empty boxes at a trash compactor, it was Plaintiff's intention to then drive the lift truck to its usual storage location at the end of his shift.  However, as Mr. Vallee began to travel, he lost control of its operation and crashed his RM6000 into a bollard approximately 20-25 feet away from where he had started.  Before the impact occurred, Mr. Vallee's left foot exited the confines of the operator compartment where it was crushed between the bollard and the side of the lift truck.

An inspection of the lift truck by Republic representatives shortly after the accident revealed no issues in any aspect of its operation, including no issues with the plugging, braking, or steering systems.  Republic returned the RM6000 to normal use in the warehouse that same day without any repairs or modifications needed.[14]  In the Accident Report prepared by Republic, it attributed the accident to Mr. Vallee attempting to drive off ***"too quickly"*** and ***"too fast"*** and that he had ***"fail[ed] to obey safe work practices."***[15]  Unfortunately, the extent of the injuries sustained to the Plaintiff's left foot ultimately resulted in the amputation of his left leg below the knee.

On May 1, 2020, Mr. Vallee initiated this action in the 24th Judicial District Court for the

---

[12] *Id.* Crown's Instructions on how to "**Be a Safe Driver**" further specifically told the operator that he/she should "**Never stick a foot or any part of your body outside the operator area, no matter how slow the truck is moving. You cannot stop 3630 kg (or *8000 pounds*) with any part of your body.  A foot or hand caught between the truck and a fixed object will be crushed or even cut off."**  *Id.* at p. 34.
[13] Exhibit B at pp. 46-47.
[14] Exhibit C, Deposition of Donald Raziano, pp. 21-23.
[15] Exhibit D, Republic Accident Report, pp. 4-5.

Parish of Jefferson, alleging that Crown Equipment Corporation was liable for the following:

a. Designing and manufacturing a defective forklift including its instrumentalities and devices that caused shaking and loss of control.

b. Designing and manufacturing a defective forklift, including its instrumentalities and devices that failed to stip (sic) the loss of control forklift event described above.

c. Failing to design and manufacture a forklift with safety measures including a safety door to prevent extensions of lower extremities beyond the lift during loss of control events as well as safety belts/harnesses to prevent extension of lower extremities beyond the lift during loss of control events.

d. Any and all acts of negligence including any and all other breaches of duty which may be proved at trial.[16]

To support his claims for defective design against Crown, the Plaintiff has submitted reports from four (4) experts: (1) Dr. Richard M. Ziernicki, Ph.D., P.E., DFE; (2) Dr. John E. Meyer, Ph.D., P.E.; (3) Dr. Jason R. Kerrigan, Ph.D. and (4) Dr. John Jeka, Ph.D.[17]  While each of Plaintiff's experts offer slightly different opinions on how the design of the RM6000 was purportedly "defective," all four experts opine that the RM6000 should have been designed with a door which they contend would have prevented Mr. Vallee from sticking his foot outside the confines of the operator compartment.  Some (but not all) of Plaintiff's experts have also identified rearrangement of the foot pedal controls and utilization of a backrest sensor as purported additional "alternative designs" for the lift truck.[18]  However, these other design proposals are really "beside the point" because all of Plaintiff's experts have testified that without the addition of a door, they would still consider the product to be defective.[19]  Accordingly, for the purposes of this Motion,

---

[16] Rec. Doc. 1-2, at ¶ 3. Crown timely removed the case to this Court on the basis of diversity jurisdiction. 28 U.S.C. § 1332.

[17] Copies of the reports submitted by each of these experts are attached to this Memorandum as Exhibits E, F, G, and H, respectively.

[18] *See generally* Exhibit E, Richard Ziernicki Report, pp. 8-9; Exhibit F, John Meyer Report, p. 5; Exhibit G, Jason Kerrigan Report, p. 9.

[19] *See* Exhibit I, Deposition of Jason Kerrigan, pp. 187-96; Exhibit J, Deposition of John Meyer, pp. 107-08; Exhibit K, Deposition of Richard Ziernicki, p. 163.

Crown is addressing the one proposed alternative design that all of the Plaintiff's experts agree upon and which they all assert is the underlying defect in the design of the RM6000.[2021]

 Crown now brings this Motion for Summary Judgment for two overarching reasons.  First, Crown anticipates that its Motions in Limine will be granted leaving Plaintiff without the requisite expert evidence to support his claims for design defect.  Second, even if the proposed expert evidence is considered, Plaintiff still cannot meet his burden of proving the essential elements for a defective design claim under La. R.S. 9:2800.56.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398–99 (5th Cir. 2008). The Court must draw reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)

---

[20] Crown also notes that one of Plaintiff's experts, Richard Ziernicki, has opined that Crown should have sold a different model lift truck to Republic, a sit-down/stand-up rider lift truck, rather than the RM6000 stand-up rider lift truck. *See* Exhibit E at p. 8. However, this is not an "alternative design" opinion but an opinion that a *different product* should have been purchased by Mr. Vallee's employer. It is thus not relevant to the pending LPLA motion.  Moreover, this opinion should be excluded as argued in Crown's forthcoming Motion to Exclude Richard Ziernicki.

[21] Crown would further note that the backrest sensor theory is a true "red herring" as Mr. Vallee testified that he had his back on the backrest at all times before the accident. *See* Exhibit B at p. 72. Accordingly, the existence (or non-existence) of a backrest sensor could not have played a causative role in the accident.

(quoting 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil §
2738 (2d ed.1983)).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof
at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the
record is insufficient with respect to an essential element of the nonmoving party's claim. *See
Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting
or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.
The nonmovant may not rest upon the pleadings but must identify specific facts that establish a
genuine issue for trial. *Id.*; *see also Little,* 37 F.3d at 1075 ("Rule 56 'mandates the entry of
summary judgment, after adequate time for discovery and upon motion, against a party who fails
to make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).

IV.    **LAW AND ARGUMENT**

A.  **Plaintiff Cannot Provide the Requisite Expert Testimony to Prove a Design Defect
    Claim Under the LPLA**

"Louisiana law does not allow a fact finder to presume an unreasonably dangerous design
solely from the fact that injury occurred." *Celino v. Biotronik, Inc.,* No. CV 20-2298, 2021 WL
2982971, at *2 (E.D. La. July 15, 2021) (Africk, J.) (citing *Couturier v. Bard Peripheral Vascular,
Inc.*, No. 19-12497, —— F. Supp. 3d ——, 2021 WL 2885903, at *6 (E.D. La. July 9, 2021)
(Lemelle, J)).  In all but the most basic cases, Louisiana law requires *expert evidence* to support
an allegation that a product is defective in design. *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d
410, 412 (E.D. La. 1999). ("Without expert or technical evidence to support the contention that
the design was defective or to establish an alternative design, plaintiff has failed to create an issue
of fact to be left to a jury."); *Broussard v. Procter & Gamble Co*., 463 F. Supp. 2d 596, 611 (W.D.

La. 2006) ("An unreasonably dangerous design will not be presumed simply because injury occurred; rather, the plaintiff must come forward with scientifically viable evidence to show that the alternative design would have prevented her injuries.").  As noted by the Fifth Circuit in *Stewart v. Capital Safety USA*, "Courts consistently require expert testimony in products liability cases, even when the products in question are in common use." 867 F.3d 517, 621 (5th Cir. 2017).

Indeed, Plaintiff has acknowledged this requirement as he has served reports of four different liability experts on the issue of whether Crown's design of the RM6000 was unreasonably dangerous.  However, as previously noted, Crown has filed Motions in Limine pursuant to FRE 702 on the grounds that each of these experts lack qualifications and/or have failed to meet the standards of relevance and reliability required by Rule 702 and the Supreme Court's decision in *Daubert*. 509 U.S. at 592-93 (1993).  If, as Crown anticipates, these Motions in Limine are granted, Plaintiff will be without the requisite expert testimony to support his design defect claims and Crown will be entitled to summary judgment under FRCP 56.

**B.  Plaintiff Cannot Establish the Elements of a Claim for Defective Design Under La. R.S. 9:2800.56**

Even if Crown's Rule 702 Motions are not fully granted, Plaintiff will still be unable to meet his burden of establishing a claim for defective design under the LPLA for the following reasons.

**(1) Failure to Identify a Specific Alternative Design**

La. R.S. 9:2800.56(1) expressly requires that a plaintiff specifically identify an alternative design for the subject product that was capable of preventing his harm.  As previously indicated, Plaintiff's experts have all identified the addition of a door as their proposed "alternative design"

for the RM6000.[22]  In support of this alternative design theory, Plaintiffs experts have noted that doors have occasionally been incorporated into and/or offered as optional equipment by some manufacturers on stand-up riders. However, none of Plaintiff's experts have set forth any specific alternative design for such a door that is applicable to the Crown RM6000.  Instead, the experts have merely suggested that a door *could have been* added to the lift truck without offering any specifics as to the size of the proposed door, its composition, its thickness, its weight, its intrusion resistance, how it would be hinged, and/or whether it would be spring loaded or latched in some manner.[23]

During expert depositions, Crown's attorneys asked numerous questions to understand the specific design features of Plaintiff's experts' purported door design; however, Plaintiff's experts could not provide those details as they did not perform the work needed to create specific alternative designs.  As will be shown, merely introducing *the concept* of a door without identifying any specifications, drawings, models, schematics, or testing to demonstrate that the proposed design is specifically applicable to the subject product is insufficient to meet the requirements of the LPLA.[24]

Perhaps the leading case on this requirement of specificity is *Seither v. Winnebago Industries, Inc.,* 853 So. 2d 37, 41 (La .App. 4th Cir. 2003) in which a products liability action was brought against the manufacturer of a recreational vehicle (RV) on the basis that its design rendered the RV uncrashworthy. *Id.* at 41.  In support of this theory, the plaintiffs presented the testimony of an automotive expert who proposed certain alternative designs for the RV which he

---

[22] *See generally* Exhibit E, Exhibit F, Exhibit G, and Exhibit H.

[23] *See* Exhibit I at pp. 98, 132-33, 144; Exhibit J, pp. 86-87, 89-90, 92, 94; Exhibit K, p. 164.

[24] *See generally id.*; The same issues exist with respect to the other "alternative designs" proposed by some of Plaintiff's experts, i.e., the reprogramming of the foot pedals and the incorporation of a backrest sensor. All that Plaintiff's experts have done is propose mere *concepts* without doing any of the work necessary to provide details for how such designs would actually be incorporated into the Crown RM6000.

claimed would have prevented the injuries which led to the death of the vehicle occupants. *Id.*  In

considering whether these proposed alternative designs were sufficient to maintain the plaintiff's

burden of proof under the LPLA, the court noted that "his design criteria were not outlined, there

were no engineering drawings produced, he did not establish any dimensions and he had done no

analysis or testing." *Id.*  Accordingly, the court concluded that "there was no valid alternative

design presented. [The expert] presented merely a concept that was untested, unengineered, and

not presented to the jury in any fashion more than mere speculation." *Id.*  The court thus found that

the trial court had erred in failing to grant a directed verdict on this issue. *Id.*

Only a few months later, this Court reached a nearly identical result in *Scordill v. Louisville

Ladder Grp., LLC*, 2003 WL 22427981 (E.D. La. Oct. 24, 2003) (Vance, J.).  In *Scordill*, the

plaintiff was injured when a stepladder collapsed while he was performing some welding work.

He brought a products liability action against the manufacturer of the ladder and presented expert

evidence of an alternative design which consisted of certain heavy-duty ladders manufactured by

the same manufacturer four years earlier, positing that they were "safer than the incident ladder by

virtue of a stiffener, a boot, and a protective collar." *Id.* at *9. In holding that this evidence was

insufficient to maintain the plaintiff's burden under the LPLA, this Court noted:

> **To begin with, the Court notes that plaintiffs fail to clearly identify a specific
> alternative design. Plaintiffs point only to pictures of the heavy-duty ladder
> manufactured by Louisville Ladder, but do not clarify how a stiffener, boot,
> or collar would apply to the incident ladder model. Nowhere do plaintiffs
> identify how tall or strong such a boot would be or where on the ladder a
> stiffener or protective collar would be placed to prevent an accident like
> Scordill's.**

*Id.*  This Court thus granted the defendant's motion for summary judgment on plaintiff's design

defect claims. *Id.*

Less than a year later, this Court was again called upon to address the need for a specific alternative design in *Gray v. Industrial Plant Maintenance*. 2004 WL 1661209 (E.D. La. Jul. 23, 2004) (Vance, J.). In *Gray,* the plaintiff was injured when, while dismounting from a tractor, his pant leg became caught in the power take off (PTO) shaft at the rear of the tractor. He brought a products liability claim against the manufacturer of the tractor contending that it was defective in construction/composition, in design, and for failure to warn. *Id.* at *1. In attempting to carry his burden on the design defect claim, the plaintiff suggested an alternative design that appeared to employ a cover over the PTO shaft and a cut-off switch that would have engaged when the operator got off the seat of the tractor. *Id.* at *5. In considering whether this was sufficient to maintain his burden of demonstrating a sufficient alternative design, this Court noted:

> **Gray's suggested alternative design is not specific enough to be a valid alternative design. He submits no drawing, specification, model, sample, calculation, photograph, or expert opinion on his proposed alternative design. He merely describes it generically as having a cutoff switch and "a cover of some sort over the PTO shaft."**

*Id.* at *5. After concluding that the plaintiff had also not submitted sufficient evidence to sustain his claims for a defect in construction/composition and/or failure to warn, this Court granted the defendant's motion for summary judgment. *Id.* at *6.[25]

As in *Seither, Scordill,* and *Gray,* this Court should also find that Mr. Vallee has wholly failed to present evidence of a specific alternative design for the RM6000. The plaintiffs in each of the cited cases presented proposed "alternative designs" for the involved products but failed to offer any specifics as to how those proposed designs would be incorporated into the product at

---

[25] See also *Weams v. FCA, LLC.*, 2019 WL 960159, *20 (M.D. La. 2/27/19) (motion for summary judgment granted on design defect claims where none of plaintiffs' experts had proposed or identified specific alternative designs for the product at issue); *Tassin v. Sears Roebuck and Co.,* 946 F.Supp. 1241, 1250–52 (M.D.La.1996) (excluding alternative designs that did not include calculations, testing or recorded results of testing, photographs, or drawings).

issue. None of those experts presented any drawings, specifications, models, samples, calculations, or testing to meet their burden of presenting a *specific* alternative design. The same is true in this case. None of the four liability experts proffered by the Plaintiff has set forth a specific alternative design for the Crown RM6000.[26] Instead, all they have done is to suggest a generic *concept* for adding a door to a lift truck without doing any of the work needed to demonstrate that such a door could actually be incorporated into the product at issue. Such speculative concepts do not meet the requirement of La. R.S. 9:2800.56(1) which requires specific proof of an "alternative design for **the product**." (emphasis added).

The U.S. Fifth Circuit has expressly recognized the importance of identifying a *specific alternative design* in a stand-up rider lift truck case. In *Guy v. Crown Equipment Corporation*, 394 F.3d 320 (5th Cir. 2004), a stand-up rider forklift operator brought a design defect claim under the Mississippi Products Liability Act (MPLA) against Crown stemming from injuries sustained when her left leg was crushed. In support of her claim, the plaintiff intended to present expert testimony that the forklift was defectively designed "because it did not have a mechanism to restrain the operator to the operator compartment; and either an operator-compartment closure (metal or textile door) or an operator body restraint could have prevented Guy's injuries." *Id.* at 323. Crown moved in limine to exclude plaintiff's proposed expert, asserting his testimony was unreliable and, therefore, inadmissible under Federal Rule of Evidence 702. *Id.* The district court granted the motion to exclude the proposed expert testimony and granted Crown's motion for judgment as a matter of law. *Id.* at 324.

In affirming the district court's ruling, the Fifth Circuit specifically noted that the plaintiff's expert had failed "to definitively offer a specific feasible design alternative," "had not reached any

---

[26] *See* Exhibit I at pp. 98, 132-33, 144; Exhibit J, pp. 86-87, 89-90, 92, 94; Exhibit K, p. 164.

concrete conclusions about the best design alternative," and had presented nothing more than "conceptual suggestions." *Id.* at 327. [27]   Although *Guy* was not decided under Louisiana law, the provisions of the MPLA are analogous to those in the LPLA as they require proof of a "feasible design alternative that would have to a reasonable probability prevented the harm." MISS. CODE ANN. § 11-1-63(f).  The *Guy* decision demonstrates, in the context of a case involving a product virtually identical to that at issue here, the importance of presenting more than a mere *concept* to sustain a design defect case.  Because Plaintiff's experts have done nothing more than to suggest the addition of a door without demonstrating its applicability to the RM6000, his claims should also be dismissed as a matter of law.

Most recently, the United States Court of Appeals for the Tenth Circuit reached a nearly identical result in another case involving a stand-up rider forklift.  In *Petersen v. Raymond Corp.*, 994 F.3d 1224 (10th Cir. 2021) the plaintiff was injured while operating a stand-up rider forklift with an open compartment and brought product liability claims against the manufacturer. Plaintiff's expert concluded that adding a door would address the purported defect; however, the expert did not commit to the specific type of door he believed was necessary.  *Id.* at 1225. The defendant moved to exclude the plaintiff's expert testimony and for summary judgment for the same reasons identified herein. *Id.* The district court granted the defendant's motions, finding that the plaintiff "failed to offer a *specific* safer, alternative design and thus failed to reliably support his opinion," and further held that, because the plaintiff "lacked expert testimony that a safer, alternative design existed at the time of his injuries, he could not meet his burden for a Utah strict liability claim." *Id.* at 1225-26 (emphasis in original).

---

[27]  The Court also noted that plaintiff's expert "did not refer to specific designs; did not estimate the cost to Crown of either design; and did not state whether the design alternatives would satisfy the standard for a MPLA feasible design alternative—whether they would impair the usefulness, utility desirability, or practicality of the forklift." *Id.* at 326.

On appeal, the Tenth Circuit reviewed the district court's grant of summary judgment *de novo*. *Id.* at 1226.  After a thorough review of the record, the appellate Court concluded that because the plaintiff's expert "failed to commit to *any definitive* feasible design alternative," that the district court had "rightfully excluded his testimony on that basis." *Id.* The Court further held that "[p]laintiff's expert . . . never presented a definitive safer, alternative design. In fact, he made a point not to commit to any specific design. He only advocated the use of 'a door' and offered conceptualized possibilities." *Id.* at 1227-28. It continued:

> **Without commitment to any design, Plaintiff's expert offered only sweeping opinions about doors in general. Plaintiff's expert argued that he could put a door on the Raymond forklift, but he had never done so. He opined that a manufacturer should construct a door "out of a suitable material that would withstand the force of impact" but he did not say what constituted a suitable material. He contended that the "cost of providing such a rear door would be insignificant relative to the cost of the forklift" but he did not offer any numerical values aside from a projection for the cost of adding a latching rear door. But again, he never committed to a latching rear guard as an alternative design. So, he offered this valuation only as a general example.**

*Id.* at 1229.  The Court of Appeals further found that this failure to commit to a specific alternative design, "made it impossible to compare the benefits and risks of any phantom design made of unknown materials, attached in unknown ways, with unknown safety and performance effects, at an unknown cost, to the Raymond design." *Id.* at 1230.  The Tenth Circuit thus held that the exclusion of the expert's testimony was proper and that the district court had properly granted summary judgment in the defendant's favor. *Id.*

The *Petersen* case, although decided under Utah law, presents a nearly identical factual scenario as this matter. Just as in *Petersen*, Plaintiff seeks to bring a products liability claim against the manufacturer of a stand-up rider forklift with an open compartment but without committing to any "definitive feasible design alternative." *Id.* at 1226. And, as in *Petersen*, Plaintiff's experts

have offered only "conceptualized possibilities" of the addition of a door without any information on the material from which such a door would be constructed, the manner in which it would attach to the forklift, any numerical values (other than cost of the addition of a door), and without having ever added a door to the forklift at issue themselves.  In fact, Plaintiff's experts are relying upon and parroting the same opinions offered by Tom Berry, who was plaintiff's expert in the *Guy* and *Peterson* cases that was excluded for failing to perform the same analysis that is at issue in this case.[28]  Here, not one of Plaintiff's expert witnesses provides an alternative design for the RM6000 with sufficient specificity to meet the demands of the LPLA and Crown is thus entitled to summary judgment on Plaintiff's design defect claims.

### (2) Failure to Demonstrate that the Proposed "Alternative Design" is Capable of Preventing the Harm

Even if this Court finds that Plaintiff's general *concept* of adding a door to the RM6000 somehow constitutes a proper "alternative design," he must also prove that such design "was capable of preventing the claimant's damage." La. R.S. 9:2800.56(1).  At the outset, there is a fundamental problem in even considering this requirement.  Without specifications for the purported "alternative design" of the RM6000—including the material from which the proposed door would be constructed; the size, weight, height, and thickness of the proposed door; and the manner in which the proposed door latches and/or otherwise closes the operator compartment—there is simply *no starting point* from which to evaluate whether any such design was capable of preventing Plaintiff's injury.[29]

---

[28] *See generally Guy*, 394 F.3d 320 (5th Cir. 2004); *Petersen*, 994 F.3d 1224 (10th Cir. 2021).
[29] Again, the other "alternative designs" proposed by Plaintiff's experts all suffer from the same flaw in that they have failed to offer any specifications for the purported "alternative designs;" thus, it is impossible to determine whether these other "alternative designs" are capable of preventing Plaintiff's injury.

Even if Plaintiff's experts had articulated a specific alternative design for the RM6000 (which they have not), he still must prove that the adoption of that design would have prevented his injury.  His experts could have potentially met that burden by *actually testing* a proposed alternative design,[30] but they simply did not do so.  The failure of an expert to "test" an opinion or theory has been cited frequently as a crucial if not decisive factor in excluding the expert's testimony.  See, e.g. *Watkins v. Telsmith, Inc.,* 121 F.3d 984 (5th Cir. 1997) (testimony of expert in machine design was rejected where he did not test his proposed alternative design for gravel conveyor system so as to support his contention that the alternative design would have prevented accident); *Cummins v. Lyle Inds.*, 93 F.3d 362 (8th Cir. 1996) (testimony of engineering expert was rejected where he had never tested his proposed alternative designs for an industrial trim press and had no practical knowledge on the application of his alternative design to the product); *Sittig v. Louisville Ladder Group* LLC, 136 F.Supp.2d 610, 619 (W.D. La. 2001) (testimony of mechanical engineer and biomechanical engineer both rejected because of a failure to perform any tests on the proposed alternative design); and *Tassin v. Sears, Roebuck and Co.*, 946 F.Supp 1241 (M.D. La. 1996) (testimony from mechanical engineer was excluded where he did not test his alternative design for a miter gauge clamp).

A court is not bound to blindly accept an expert's opinion that if "X" design is incorporated into a product, the risk of injury will be eliminated or reduced.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512 (1997).  As noted by the United States Supreme Court in *Daubert*: "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified;

---

[30] Parenthetically, Crown would note that it is difficult to actually test an alternative design when no specific alternative design has been proposed or modelled.

indeed, this methodology is what distinguishes science from other fields of human inquiry" 509 U.S. at 594.  In *O'Connor v. Commonwealth Edison Co.*, 807 F.Supp. 1376 (C.D. Ill. 1992), *affd,* 13 F.3d 1090 (7th Cir. 1994), the court summarized the importance of this factor:

> In science, a proposition is not true just because one claiming to be an expert is willing to make such a statement. In law, a statement is not admissible just because a self-proclaimed expert is willing to say it on the witness stand. **Scientific truths must be verifiable or they are not scientific truths at all.** An expert's opinion must also be verifiable or it is not **expert** at all. Rules of both science and evidence require a scientist or an expert **to have a verifiable scientific basis** for his opinions.

*Id*. at 1390 (emphasis added).

An excellent illustration of the important role that testing plays in determining the viability of a proposed alternative design is found in the earlier cited decision of *Seither v. Winnebego Industries, Inc.*, 853 So. 2d 37, 2002-2091 (La. App. 4 Cir. 7/2/03).  In finding that the alternative design proposed by the plaintiffs' automotive expert was inadequate to support recovery under the LPLA, the court of appeal expressly noted the failure on the part of the expert to have analyzed or tested his alternative design:

> Mr. Stilson testified on cross-examination that he did not calculate or measure the amount of intrusion that would have occurred even with his supposed design, **thus defeating a claim that the alternative design would have prevented plaintiffs' injuries.** The record is devoid of any technical drawings, calculations, scientific study, photographs, or the publication of any engineering principles as to this proposed alternative design.

*Id.* at 41 (emphasis added).  The court thus concluded that the plaintiff's expert had "presented merely a concept that was untested, unengineered, and not presented in any fashion more than mere speculation." *Id.*

An examination of the record in this case reveals that identical flaws exist in the proposed alternative designs proffered by Plaintiff's experts.  None of them have conducted any testing of their proposed alternative door design to see if it would, in fact, prevent the damage which occurred

in this case.[31] As in *Seither,* the proposed alternative designs are merely concepts that are "untested, unengineered, and not presented in any fashion more than mere speculation." *Id.* at 41. Because there has been no testing of any proposed door, too many questions remain unanswered:

- *Could the proposed door have been incorporated into the RM6000 without significantly impacting the operational characteristics of the lift truck?*

- *Would the proposed door have stayed closed given the manner in which Plaintiff was operating the lift truck?*

- *Could Plaintiff have pushed the proposed door open and sustained the same injury?*

- *Could the proposed door have caused Plaintiff new and/or further injuries beyond those that he alleges he sustained in the accident in question?*

- *Would users employ tactics to override the existence of a door in day-to-day operation of the lift truck?*

- *Could the proposed door have created different safety risks to operators of the RM6000?*

Without identifying a specific door design, let alone failing to test any purported alternative design, Plaintiff's experts are unable to answer any of these questions.[32]

Accordingly, Plaintiff's claim for defective design under the LPLA must also fail as he cannot exclude the possibility that he may still have been injured even if the proposed alternative design had been employed.  *See Johnson v. Transwood, Inc.*, 2015 WL 5680369 (M.D. La. 2015) (rejecting expert's proposed generic alternative designs where they had not been tested) and *Lacoste v. Pilgrim International*, 2009 WL 126847 (E.D. La. Jan. 15, 2009) (Vance, J.) (granting summary judgment where plaintiff could not establish that proposed alternative design for bed sheets was "capable of preventing his harm" as required by the LPLA).  Because the Plaintiff

---

[31] *See* Exhibit I at pp. 98-99, 133-34; Exhibit J at pp. 92, 117-18, 127-28; Exhibit K, p. 60.
[32] Once again, the other "alternative designs" proposed by Plaintiff's experts suffer from the same flaws in that no testing of any purported "alternative design" has been performed.

cannot meet this critical requirement under La. R.S. 9:2800.56, summary judgment should be granted on this basis as well.

### (3) Failure to Perform the Risk-Utility Analysis Required by the LPLA

Even if this Court finds that Plaintiff has offered evidence of an alternative design and that Plaintiff has proven that the design was capable of preventing his injury, summary judgment is still appropriate because Plaintiff cannot satisfy the risk-utility analysis required by the LPLA. Pursuant to La. R.S. 9:2800.56(2), a plaintiff *must* show that "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." La. R.S. 9:2800.56(2) goes on to specifically state that "[a]n adequate warning about a product **shall be considered** in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product." (emphasis added).

Here, although Plaintiff's experts have considered (to varying degrees) the frequency of certain accidents involving stand-up lift trucks,[33] they have completely failed to consider the impact that ***Crown's warnings*** would have on the likelihood of any accident taking place. As noted above, Crown provided explicit and repeated warnings not only as to the importance of always keeping the lift truck under proper control, but also keeping the operator's arms, hands, legs, and feet inside the operator compartment at all times.[34] None of Plaintiff's experts considered these warnings when offering an opinion that overall frequency and gravity of harm justified adoption of their proposed alternative design. Indeed, none of Plaintiff's experts *even mentioned*

---

[33] *See e.g.* Exhibit I at pp. 119-22; Exhibit J, pp. 70-73; Exhibit K, pp. 21-22. Crown does not dispute the gravity of Plaintiff's injury; however, the opinions of Crown's experts refute the opinions of Plaintiff's experts with regard to the allegations regarding the frequency of such injuries.

[34] *See* warnings noted at n. 8-12 above.

Crown's warnings in their expert reports.[35]  Consideration of such warnings is critical to the LPLA's risk-utility analysis because they may "reduce the likelihood of the claimant's damage to the point that the product is no longer unreasonably dangerous." *See* John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565, 598 n.150 (1989).  Plaintiff's experts' failure to consider Crown's warnings is thus fatal to the first part of the risk-utility analysis required by La. R.S. 9:2800.56(2).

Even if Plaintiff's experts had properly considered Crown's warnings when initially engaging in LPLA's risk-utility analysis, the claim for defective design still fails because there has been no meaningful consideration of the degree to which the proposed alternative design might have on the ***utility*** of the product. La. R.S. 9:2800.56(2).  As previously noted, the Crown RM6000 is a stand-up rider lift truck which is specifically designed to allow the operator ***easy on and off access*** while performing his or her day-to-day activities.  This ease of access is a key characteristic of the RM6000 and distinguishes it from other types of materials handling equipment in which an operator may not have the same needs.  The addition of a door to the RM6000 would ***alter this fundamental characteristic*** of the product.[36]  None of the Plaintiff's experts have given any serious consideration to this reality and, as such, they have failed to conduct a proper risk-utility analysis as required by the LPLA.

The impact that a proposed alternative design might have on the purpose for which a product was originally intended, was expressly recognized in *Scordill v. Louisville Ladder Group,*

---

[35] *See generally* Exhibit E, Exhibit F, Exhibit G, Exhibit H.
[36] Depending on the specific design of the door involved (which we do not know), the operator would have to unlock/unlatch the door, open the door, step up into the operator compartment, close the door, and then re-lock/latch the door each time when getting on the lift truck.  He/she would then have to repeat the exact same steps in reverse order each time they desired to get off the lift truck.  Given that operators of these lift trucks might be required to get on and off them hundreds of times each shift, it is evident that the addition of a door would significantly impair the overall utility of the product as compared to the current design which allows the operator to ***freely step on and off the truck.***

*LLC*, 2003 WL 22427981 (E.D. La. Oct. 24, 2003) (Vance, J.).  In pursuing a claim for defective design, the plaintiff's expert proposed that the manufacturer should have incorporated certain design features which were found on the heavy-duty model of its ladders. *Id.* at *10.  In finding that a proper risk-utility analysis had not been performed to justify the utilization of this design, this Court noted:

> **Further, plaintiffs provide no support for their assertion that the alternative design would have little if any impact on the utility of the ladder. The alternative design identified by the plaintiffs is currently found on the Louisville Ladder's heavy-duty ladder. Plaintiffs present no evidence as to what effect the addition of a stiffener, boot, and protective collar would have on the weight, utility and mobility of a ladder <u>designed to be lightweight</u>.**

*Id.* at *10 (emphasis added).  As in *Scordill*, where this Court recognized that the imposition of heavy-duty design features on what was intended to be a lightweight ladder was inappropriate, the imposition of a door on this product, which was designed to allow easy on and off access, is equally inappropriate.[37]  Because Plaintiff's experts have failed to meaningfully consider the impact of their proposed design on the overall utility of the RM6000, Mr. Vallee cannot maintain a claim for defective design under La. R.S. 9:2800.56(2).  See *Lavespere v. Niagara Machine & Tool Works, Inc,* 910 F.2d 167, 183 (5th Cir. 1990) (grant of summary judgment affirmed in favor of product manufacturer where plaintiff failed to demonstrate that a proper LPLA risk-utility analysis had been conducted, including consideration of "the loss of product utility that the use of the alternative design would have occasioned.").

---

[37] Although not necessary for the disposition of this Motion, another crucial reason that Crown does not incorporate doors into its standing lift trucks is because of the potential that such doors may make it more difficult to exit the truck in the event of a tip-over or off-dock event.  Testing conducted by Crown has demonstrated that operators are ***more likely*** to sustain a fatal and /or serious outcomes if they remain within the lift truck during those events than if they exit the truck.  Should this case go to trial, Crown will present evidence to support this assertion, but this issue need not be resolved in connection with the present Motion for Summary Judgment.

In sum, Plaintiff cannot meet his burden of proof regarding the risk-utility analysis required by § 2800.56(2) of the LPLA and this presents just one more reason why this Court should grant Defendant's motion and dismiss Plaintiff's design defect claims.

## V.   <u>CONCLUSION</u>

For all the reasons stated above, the Court should grant summary judgment in favor of Crown on Plaintiff's LPLA design defect claims.

**IRWIN FRITCHIE URQUHART & MOORE LLC**

BY:     */s/ Kelly E. Brilleaux*
        QUENTIN F. URQUHART, JR. (#14475)
        KELLY E. BRILLEAUX (#33030)
        400 Poydras Street, Suite 2700
        New Orleans, Louisiana 70130
        Telephone: (504) 310-2100
        Facsimile: (504) 310-2101
        Email: qurquhart@irwinllc.com
                kbrilleaux@irwinllc.com


**MCDONALD TOOLE WIGGINS, P.A.**

        MICHAEL CORRENTI (*pro hac vice*)
        PHILIP KEGLER (*pro hac vice*)
        111 N. Magnolia Ave, Suite 1200
        Orlando, Florida 32801
        Telephone: (407) 246-1800
        Facsimile: (407) 246-1895
        Email: mcorrenti@mtwlegal.com
                pkegler@mtwlegal.com


*Counsel for Crown Equipment Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on the 20th day of October, 2021.

               */s/ Kelly E. Brilleaux*