UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAWSON VALLEE | * | NO. 2:20-CV-01571 |
| | * | |
| PLAINTIFF, | * | JUDGE: SARAH S. VANCE |
| | * | |
| VERSUS | * | MAG. JUDGE: KAREN WELLS ROBY |
| | * | |
| CROWN EQUIPMENT CORPORATION OF OHIO D/B/A CROWN LIFT TRUCKS, GEORGE BORDELON, AND ADAM GIROIR | * * * * | SECTION: "R" (4) |
| DEFENDANTS. | | |

**CROWN EQUIPMENT CORPORATION'S
REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
TO EXCLUDE PROPOSED DESIGN OPINIONS OF DR. JOHN MEYER**

MAY IT PLEASE THE COURT:

Defendant, Crown Equipment Corporation ("Crown"), submits this Reply Memorandum in Support of its Motion *in Limine* to Exclude the Proposed Design Opinions of Dr. John Meyer (Rec. Doc. 115). Despite Plaintiff's assertions and Dr. Meyer's untimely supplemental affidavit, Dr. Meyer remains unqualified to offer design opinions on stand-up rider forklifts and Plaintiff is unable to prove, as is his burden, that Dr. Meyer is qualified or that his design opinions are relevant and reliable under Federal Rule of Evidence 702. Dr. Meyer's opinions should thus be excluded from consideration by the jury.

I. **REPLY ARGUMENT**

A. **Plaintiff's Submission of a Supplemental Affidavit from Dr. Meyer is Improper and it Should be Stricken.**

In opposing Crown's motion, Plaintiff heavily relies on an affidavit prepared by Dr. Meyer on October 29, 2021. (Rec. Doc. 132-1). This submission, which amounts to nothing more than another "bite at the apple" by Dr. Meyer, is wholly improper and should be stricken from the

1

record. The Fifth Circuit has made it clear that supplemental expert submissions cannot be used to "fix" problems in initial expert reports. *Lampe Berger USA, Inc. v. Scentier, Inc.*, 2008 WL 3386716, * 2 (M.D. La. Aug. 8, 2008) (*citing Reliance Ins. Co. v. Louisiana Land & Explorations Co.*, 110 F. 3d 253, 258 (5th Cir. 1997) (affirming district court's refusal to allow late supplementation of expert reports)). Parties are not entitled to endless supplementation of their expert reports when faced with challenges to their original expert evidence and courts have stricken affidavits which go beyond the original opinions expressed in an expert's report. *Avance v. Kerr-McGee Chemical LLC*, 2006 WL 3484246, *7 (E.D. Tex. 2006).

"District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Reliance*, 110 F. 3d at 258. "A new expert affidavit which is submitted to rebut a summary judgment motion should be stricken if the new opinion is different from the earlier Rule 26 report." *Cleave v. Renal Care Group, Inc.*, 2005 WL 1629750, *1 (N.D. Miss. July 11, 2005) *citing Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603 (S.D. Tex. 2001) ("A subsequent expert affidavit submitted to rebut a summary judgment motion may be excluded if it differs from an earlier Rule 26 report."). Moreover, when a report discusses issues which weren't included in the original report, it cannot be considered a "supplement." *See e.g. Shelter Mutual Ins. Co. v. Culbertson's Limited, Inc.*, 1999 WL 135297, *4 (E.D. La. Mar. 11, 1999). Plaintiff has made no showing to address the timeliness of this supplemental affidavit nor a showing as to why it is justified or harmless. Dr. Meyer's recently submitted affidavit clearly contains new information that was not included in his prior expert report submitted under Rule 26 and, as such, it should not be considered by this Court and instead should be stricken in its entirety.

### B. Dr. Meyer Remains Unqualified to Offer Design Opinions Specific to Stand-Up Rider Lift Trucks like the RM6000.

Despite Plaintiff's assertions to the contrary, Dr. Meyer is *not* an expert in the design of products, particularly not the design of stand-up rider forklifts like the RM6000 at issue in this case. While Dr. Meyer has an engineering degree and works in the field of engineering and accident investigation, Dr. Meyer conceded during his deposition that he *has never designed any part of a product that had gone to market.*[1] He meekly offered that he had "designed stuff related to manufacturing processes."[2] Purported experience in the design of some nondescript "stuff" cannot qualify Dr. Meyer as a design expert before this Court. Moreover, Dr. Meyer freely admitted in his deposition that:

- He has never designed a stand-up rider lift truck or a forklift.[3]
- He has never designed a component part for a stand-up rider lift truck or a forklift.[4]
- He does not hold any design patents for a stand-up rider lift truck or *any* product.[5]
- He has never worked for a forklift or stand-up rider lift truck manufacturer.[6]
- He has never performed any tests related to any forklift or stand-up rider lift truck.[7]
- He has never published any papers or articles related to forklift safety or design.[8]
- He has never been retained by a company to perform consulting work for a forklift.[9]
- He has never been retained by a forklift manufacturer to perform a risk assessment.[10]
- He has never offered consulting services to a stand-up rider lift truck manufacturer.[11]
- He has never developed training materials for stand-up rider lift trucks or forklifts.[12]

---

[1] Rec. Doc. 115-4, p. 31.
[2] *Id.*
[3] *Id.* at p. 12.
[4] *Id.*
[5] *Id.* at p. 35.
[6] *Id.* at p. 36.
[7] *Id.* at p. 38.
[8] *Id.* at pp. 34-35.
[9] *Id.* at p. 37.
[10] *Id.* at pp. 36-37.
[11] *Id.* at p. 37.
[12] *Id.*

- He has never worked for a government agency with responsibility for setting standards for forklifts.[13]
- He has never been asked by a government agency to perform a design or safety evaluation of forklifts.[14]
- He has never served on any American National Standards Institute (ANSI) committee dealing with forklift safety or design.[15]
- He hasn't made any submissions to the ANSI B56.1 committee regarding safety of stand-up rider lift trucks.[16]

What exactly about these professional deficiencies qualifies Dr. Meyer as an expert before this Court on the topic of stand-up rider lift truck design remains unanswered by Plaintiff. Rather, Plaintiff attempts to argue that Dr. Meyer is a general expert due to his credentials in other applications of engineering and physics. While Dr. Meyer may be qualified as a general expert in some fields, that does not qualify him to be an expert on the topic of stand-up rider lift truck design.

Plaintiff's Opposition first points to case law which is entirely unrelated to the field of Dr. Meyer's expertise, including chemistry and medicine.[17] While the case law cited by Plaintiff recognizes that a nonspecialized expert can testify about topics with which they have no experience, the specific facts of those cases relate to topics that would be appropriate for a general expert to address. For example, a chemist clearly knows chemistry without working with a specific chemical compound. A doctor clearly knows how to read medical reports despite not being specialized in the specific field where the report originated from. Tellingly, Plaintiff does not cite to any cases in which a general mechanical engineer was accepted as an expert on the design of a specific type of equipment without any experience.

---

[13] *Id.* at p. 38.
[14] *Id.*
[15] *Id.* at p. 39.
[16] *Id.*
[17] Rec. Doc. 132, p. 6.

Plaintiff further offers that the cases cited by Defendant are outdated and superseded by more recent Fifth Circuit law, i.e., *United States v. Wen Chyu Liu*, 716 F. 3d 159 (5th Cir. 2013). However, the cases cited by Defendant espouse the same principles related to specialization as *Wen Chyu Liu* but further find that Rule 702 "nonetheless requires that the expert be qualified in the *relevant field*." *Sittig v. Louisville Ladder Group LLC*, 136 F. Supp. 2d 610, 616 (W.D. La. 2001) (emphasis added). The relevant field here is product design of a stand-up rider lift truck. Dr. Meyer has never designed a product and has never done any other work related to stand-up rider lift truck design. Thus, he cannot be qualified as an expert.

Because Dr. Meyer conceded that he lacked any qualifying professional experience or expertise as noted above, this Court should not permit him to offer expert testimony on stand-up rider forklift design.

### C. Dr. Meyer Fails to Offer Specific Alternative Designs Which Renders his Opinions Irrelevant for Determining the Facts at Issue in this Case.

In arguing that Dr. Meyer is not required to identify specific alternative designs, Plaintiff misses the point of Crown's argument. Because Dr. Meyer fails to identify a specific alternative design, a necessary element for proving Plaintiff's design defect claim under the Louisiana Products Liability Act ("LPLA"), Dr. Meyer's testimony will not "help the trier of fact" as required by Rule 702 for expert testimony to be *relevant*. Dr. Meyer's timely reports and his deposition testimony do not aid the jury in determining whether there was an alternative design available which would have prevented Plaintiff's injury because *he does not identify a specific alternative design that could have done so*.[18]

---

[18] Although Plaintiff has attached an affidavit from Dr. Meyer (Rec. Doc. 132-1) which contains additional information related to his proposed alternative designs, including new information regarding a door and the foot pedal sensors, these opinions were not included in Dr. Meyer's timely filed reports and Dr. Meyer's untimely supplemental affidavit should be stricken. *See* Section I(a) *infra*.

As explained in Defendant's Motion, Dr. Meyer proposes two design *concepts*.[19] Despite offering these two concepts, Dr. Meyer fails to materialize any aspect of these designs. He specifically testified: "**I have not submitted any specific design recommendation...**"[20] As explained in Defendant's Alternative Motion for Summary Judgment on Plaintiff's Design Defect Claims (Rec. Doc. 112-1), the LPLA requires a specific alternative design to be offered by a plaintiff to prove a design defect claim.[21] *See, e.g., Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, *9 (E.D. La. Oct. 24, 2003) (Vance, J.) (granting summary judgment where plaintiffs failed to "clearly identify a specific alternative design" for the subject product); *Seither v. Winnebago Industries, Inc.*, 853 So. 2d 37 (La. App. 4 Cir. 2003) (holding plaintiff failed to meet requirements of design defect claim when alternative design was not presented with any engineering drawings, no tests were performed, and the expert failed to provide more than a concept). Dr. Meyer has failed to provide this Court with any specific drawings, renderings, specifications, testing, or prototypes for either of his two alternative design concepts and thus his opinions cannot be relevant to the jury regarding Plaintiff's design defect claim.

Plaintiff attempts to "fix" the lack of a specific alternative design in Dr. Meyer's initial report through an affidavit attached to his Opposition to Crown's Motion (Rec. Doc. 132-1). This affidavit is an untimely effort to supplement and fix Dr. Meyer's Rule 26 report in response to Crown's challenges and should be stricken as procedurally improper. As explained above, Dr. Meyer's affidavit goes well beyond what is set forth in his original April 19, 2021 report regarding the design concepts he proposes. In Paragraphs 7 through 10 of his untimely disclosed affidavit,

---

[19] Rec. Doc. 115-1. Dr. Meyer purports to propose, and Plaintiff spends a considerable amount of time in his Opposition explaining, that a presence sensor in the backrest of the RM6000 is an alternative design. However, as stated in Crown's Motion, Plaintiff testified that he kept his back on the backrest at all times during the accident. Rec. Doc. 115-6, p. 3. Thus, a backrest sensor would not have prevented any part of Plaintiff's injuries rendering this "alternative design" entirely irrelevant.
[20] Rec. Doc. 115-4, p. 86.
[21] Rec. Doc. 112-1.

Dr. Meyer proffers new opinions which provide further specification for his proposed alternative design concepts. **This is the first time that these opinions have been disclosed**. For example, this is the first time that Dr. Meyer offers the opinion that the door is designed to be spring loaded; that the door could be hinged on either side and still be effective; that he endorses the door used in the Railsback et al. 2014 study and its accompanying specifications; and the first time that Dr. Meyer discusses the specifics of the change to the foot pedals on the RM6000. Plaintiff's attempt to backdoor these new design details through an untimely disclosed affidavit is an acknowledgement that Dr. Meyer's expert report and deposition testimony lack the information necessary to survive *Daubert*. If not, there would be no need for the affidavit and Plaintiff could have cited to Dr. Meyer's expert report or deposition testimony. Dr. Meyer testified in his August 13, 2021, deposition that he hadn't committed to any specific design,[22] yet now that Crown demonstrated that this is insufficient under the LPLA, Dr. Meyer is attempting to correct those fatal deficiencies by committing to a specific door design. This is entirely improper.

Plaintiff's attempt to fix Dr. Meyer's Rule 26 report nine months after its production and fill in the gaps in his deposition testimony with this affidavit must be rejected by this Court. Dr. Meyer's timely reports and his deposition testimony fail to identify a specific alternative design for the RM6000 that would have prevented Plaintiff's injury. Thus, his opinion, if he were qualified to provide it, is irrelevant to the issues as it does not assist the trier of fact in determining whether Plaintiff has proven his LPLA design defect claim.

### D. Dr. Meyer's Opinions are Unreliable Because He Fails to Meet the *Daubert* Guideposts.

Plaintiff independently analyzes the *Daubert* goalposts in his Opposition because, when taken together Dr. Meyer's opinions in this case are clearly unreliable. Plaintiff argues that Dr.

---

[22] Rec. Doc. 115-4, p. 13.

Meyer didn't need to test his designs, that his opinions are accepted within the scientific community despite being flatly and explicitly rejected by the ANSI B56.1 subcommittee, that he doesn't need to publish literature on the relevant topic, and that, even though he had never considered the issue before being contacted by Mr. Warshauer, his opinions are not litigation driven. It is true that an expert does not need to meet every single *Daubert* guidepost; however, an expert still needs to meet *some* of them. Dr. Meyer meets none.

In *Daubert*, the Supreme Court set out five non-exclusive guideposts for judging the reliability of expert testimony: (1) whether the theory "can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication;" (3) "the known or potential rate of error"; (4) "the existence and maintenance of standards controlling the techniques operation); and (5) whether the theory has "[w]idespread acceptance' in the relevant scientific community." The Supreme Court has also identified whether the expert's testimony is litigation driven as an additional factor for lower courts to consider. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert* II"). A review of Dr. Meyer's testimony and report indicates he does not meet these standards.

While Plaintiff argues that each of Dr. Meyer's failures goes to the weight of his testimony, at some point, Dr. Meyer's opinion becomes entirely *weightless* and must be excluded. Dr. Meyer testified to not testing any of his designs during his deposition. Dr. Meyer's proposal of a door has been *explicitly rejected* by the relevant scientific body, ANSI B56.1 subcommittee, despite Plaintiff's contention to the contrary. Dr. Meyer, while well credentialed, has not published any articles, peer reviewed or otherwise, on the topic of forklifts. Lastly, Plaintiff attempts to distract the Court with statements regarding Dr. Meyer's general credentials. Plaintiff fails to respond meaningfully to Crown's assertions that, based on

Dr. Meyer's own testimony, he has never considered any aspect of forklift design *until he was approached by Plaintiff's counsel*.

Notwithstanding Dr. Meyer's failure to meet the applicable *Daubert* guideposts, Plaintiff argues that Meyer's opinion holds weight; clearly, it does not. A cumulative view of Dr. Meyer's methodology, qualifications, and experience reveals that his opinions are unreliable. Because his opinions are unreliable, they must be excluded.

## II.     CONCLUSION

In sum, for the reasons set forth fully by Crown in its original Memorandum in Support, this Court should exclude the purported "expert" design opinions of Dr. John Meyer under Federal Rule of Evidence 702 and *Daubert*.

Respectfully Submitted:

**IRWIN FRITCHIE URQUHART & MOORE LLC**

BY:     */s/ Kelly E. Brilleaux*
QUENTIN F. URQUHART, JR. (#14475)
KELLY E. BRILLEAUX (#33030)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
Email: qurquhart@irwinllc.com
           kbrilleaux@irwinllc.com

**MCDONALD TOOLE WIGGINS, P.A.**
MICHAEL CORRENTI (*pro hac vice)*
PHILIP KEGLER (*pro hac vice*)
111 N. Magnolia Ave, Suite 1200
Orlando, FL 32801 Telephone: (407) 246-1800
Facsimile: (407) 246-1895
Email: mcorrenti@mtwlegal.com
           pkegler@mtwlegal.com

*Counsel for Crown Equipment Corporation*

## **CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on the 8th day of November, 2021.

                   */s/ Kelly E. Brilleaux*