UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAWSON VALLEE                                        CIVIL ACTION

VERSUS                                               NO. 20-1571

CROWN EQUIPMENT CORP. OF                            SECTION "R" (4)
OHIO, ET AL.


## ORDER AND REASONS

Before the Court is defendant Crown Equipment Corporation's ("Crown") motion for summary judgment on reasonably anticipated use.[1] Plaintiff Dawson Vallee opposes the motion.[2] Because material facts remain in dispute, the Court denies Crown's motion.


## I.     BACKGROUND

This case arises out of a forklift accident in Harahan, Louisiana.[3] On May 3, 2019, plaintiff Dawson Vallee was operating a forklift designed and manufactured by defendant Crown. Plaintiff testified that the joystick on the forklift stopped responding, and he lost control of the machinery.[4] Plaintiff

---

[1]    R. Doc. 110.
[2]    R. Doc. 141.
[3]    R. Doc. 1-2 ¶ II.
[4]    R. Doc. 141-2 at 63 (Deposition of Dawson Vallee at 63:24-25).

also testified that his attempts to brake the forklift failed, and that the forklift "jerked [him] around,"[5] and his left leg "got kicked out to the outside" of the machine.[6] The forklift collided with a pole, and plaintiff's left leg was crushed between the pole and the forklift.[7] As a result of the accident, plaintiff underwent a below-the-knee amputation of his left leg.[8]

On May 1, 2020, plaintiff filed suit against Crown[9] in Louisiana state court, alleging negligence, and defective design and manufacture of the forklift.[10] On May 29, 2020, Crown removed the case to federal court, contending that the diversity requirements of 28 U.S.C. § 1332 were satisfied.[11]

On October 20, 2021, Crown moved for summary judgment on the issue of reasonably anticipated use.[12] Crown asserts that plaintiff contravened the mandates of his job training and Crown's express product warnings by (i) failing to maintain control over the forklift, and (ii)

---

[5]   *Id.* at 64 (Deposition of Dawson Vallee at 64:7-8).
[6]   *Id.* at 73 (Deposition of Dawson Vallee at 73:13-14).
[7]   *Id.* at 64 (Deposition of Dawson Vallee at 64:9-11).
[8]   R. Doc. 141 at 1.
[9]   Plaintiff also sued individual employee-defendants George Bordelon and Adam Giroir, but plaintiff's claims against both Bordelon and Giroir have been dismissed. R. Docs. 15 & 32. Only Crown remains as a defendant.
[10]   R. Doc. 1-2 ¶ III.
[11]   R. Doc. 1 at 1.
[12]   R. Doc. 110.

"allow[ing] his left foot to leave the confines of the operator compartment."[13]
Defendant contends that these acts by plaintiff were not "reasonably
anticipated use[s]" of the forklift, and that plaintiff is therefore unable to
meet his burden under the Louisiana Products Liability Act.[14]   Plaintiff
opposes the motion, contending that material issues of fact preclude
summary judgment on reasonably anticipated use.[15]

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there
is no genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069,
1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a
dispute to any material fact exists, [the Court] consider[s] all of the evidence
in the record but refrain[s] from making credibility determinations or
weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness
Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are

---

[13]   R. Doc. 110-1 at 14-20.
[14]   *Id.* at 19-20.
[15]   R. Doc. 141.

3

drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

The Louisiana Products Liability Act ("LPLA") provides for "the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 2800.52; *see also Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995) (noting that the LPLA's remedies are "exclusive"). The elements of a products-liability claim under

the LPLA are "(1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous;' and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Jack v. Alberto-Culver USA, Inc.*, 949 So. 2d 1256, 1258 (La. 2007) (citing La. Rev. Stat. § 9:280054(A)). As the Fifth Circuit has explained, "[i]f a plaintiff's damages [do] not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached." *Kampen v. Am. Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998). "[I]f a manufacturer does not reasonably anticipate a plaintiff's use[,] then he owes no duty to that consumer, and is not responsible for any damages caused by misuse." *Broussard v. Procter & Gamble Co.*, 463 F. Supp. 2d 596, 605 (W.D. La. 2006) (citing *Kampen*, 157 F.3d at 316).

Here, Crown contends that plaintiff's injuries did not arise out of a reasonably anticipated use of the product. The LPLA defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. Rev. Stat. § 9.2800.53(7). The relevant inquiry is "what uses of its product the manufacturer [objectively] should have

6

reasonably expected at the time of manufacture." *Kampen*, 157 F.3d at 309. Whether plaintiff's damages arose from a reasonably anticipated use is a question of fact. *Thibodeaux v. Wellmate*, 190 F. Supp. 3d 566, 571 (E.D. La. 2016) (Morgan, J).

Defendant submits two arguments in support of its contention that plaintiff's injuries did not arise out of a reasonably anticipated use of the forklift. The Court addresses them each in turn.

First, defendant argues that plaintiff's failure to maintain full control over the forklift was not a reasonably anticipated use.[16]   Specifically, defendant asserts that plaintiff did not drive his forklift cautiously and at a speed allowing him to stop the lift truck safely, and that he "failed to stay alert so that he would not run into any objects."[17]  Defendant further argues that there is no evidence indicating that anything "impaired [plaintiff]'s ability to control the acceleration, braking, or steering of the lift truck."[18] Defendant asserts that, therefore, plaintiff contravened his training and the forklift's product warnings that instruct operators to "drive cautiously," "be

---

[16]   R. Doc. 110-1 at 16-17.
[17]   *Id.* at 17.
[18]   *Id.*

alert," "[d]rive at a speed that allows you to stop safely," and to "[k]eep your truck under control at all times."[19]

But significant issues of material fact remain as to whether plaintiff was operating the forklift in violation of any safety warnings, or otherwise using the forklift in an unsafe way.  While a post-accident inspection by plaintiff's employer revealed no mechanical issues with the forklift,[20] plaintiff testified at his deposition that his accident occurred because the forklift "los[t] mechanical function"[21] when the joystick stopped responding.[22]  And George Bordelon, a Crown technician, testified that a Crown forklift's joystick can stop working for many reasons.  Bordelon explained at his deposition that "it could have been anything as minor as a piece of dirt or broken wire got inside the system and made the joy stick not want to do anything."[23]  Furthermore, plaintiff testified that he did not believe that he was driving too fast,[24] and that he traveled only four or five feet before the machine's failure prompted him to attempt to stop the machine.[25]  Based on this record, reasonable jurors could find that, at the time of plaintiff's accident, he was engaged in a

---

[19]   *See id.* at 6-7.

[20]   R. Doc. 110-5 at 3-5 (Deposition of Donald Raziano at 21:12-23:8).

[21]   R. Doc. 141-2 at 63 (Deposition of Dawson Vallee at 63:24-25).

[22]   *Id.* (Deposition of Dawson Vallee at 63:1).

[23]   R. Doc. 141-3 at 15 (Deposition of George Bordelon at 15:20-23).

[24]   R. Doc. 141-2 at 81 (Deposition of Dawson Vallee at 81:16-18).

[25]   *Id.* at 67 (Deposition of Dawson Vallee at 67:6-8).

reasonably anticipated use of the forklift.   Accordingly, defendant is not entitled to summary judgment on reasonably anticipated use as to plaintiff's loss of control of the forklift.

Second, defendant contends that plaintiff's placement of his foot outside the operator compartment does not constitute a reasonably anticipated use of the forklift.   Defendant contends that, because plaintiff's foot was crushed outside of the forklift, he must have "allow[ed]" his foot to exit the machine, in violation of the product's safety warnings.[26]   This argument lacks merit.   Plaintiff has submitted evidence indicating that his left leg was *involuntarily* thrown from the operator compartment during the accident.   Specifically, plaintiff testified at his deposition that, during the accident, the forklift "jerked" him around,[27] and that his "leg got kicked out to the outside" of the machine.[28]   Plaintiff also submits scientific evidence indicating that human balance reflexes compelled him to move his foot leftward when he attempted to brake by lifting his foot off the pedal.[29]   The evidence therefore suggests that plaintiff's foot movement was not a *use* of the product at all, and was instead a part of the resulting accident.   Put

---

[26]   R. Doc. 110-1 at 17-19.
[27]   R. Doc. 141-2 at 64 (Deposition of Dawson Vallee at 64:7-8).
[28]   *Id.* at 73 (Deposition of Dawson Vallee at 73:13-14).
[29]   *See* R. Doc. 112-10 at 5 (Report of Dr. John J. Jeka).

differently, when plaintiff's emergency began, causing his foot to involuntarily exit the compartment, his "use" of the forklift had ended.

This situation is different from the Fifth Circuit's decision in *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306 (5th Cir. 1998). There, the plaintiff jacked up a car with the tire jack at issue, and then chose to place his body beneath the car, relying on the jack to hold the car above his body as he worked. The jack collapsed, and the car fell on him. In determining the scope of plaintiff's "use" of the jack, the Fifth Circuit held that when plaintiff "placed himself beneath the car, he was still using the jack" because "he was *relying on the jack to hold the car above his body*." *Id.* at 311 (emphasis in original)). Affirming the district court's grant of summary judgment to the jack manufacturer, the court held that plaintiff's use, in violation of product warnings, was not reasonably anticipated and thus precluded his recovery. *Id.* at 318. In contrast, here, the evidence indicates that the accident was already in progress when plaintiff contends that his foot was involuntarily thrust outside the machine. Unlike in *Kampen*, the record here suggests that the placement of plaintiff's foot was not a voluntary "use" of the product, and was instead part of the accident.

Indeed, defendant itself argues that "[p]laintiff's action of sticking his foot outside of the operator compartment should not be considered a 'use' of

the product under the LPLA."[30]  As defendant explains, unlike the injured
user-plaintiff in *Kampen*, plaintiff here was not "relying" on the forklift when
he placed his foot outside the compartment.[31]  But, far from supporting
defendant's claim that plaintiff was therefore not engaged in a reasonably
anticipated use of the product, this contention in fact *undermines*
defendant's motion for summary judgment.  If plaintiff's foot placement was
not part of his "use" of the forklift, then it cannot constitute an
"[un]anticipated use" of that forklift.  By defendant's own admission, then,
plaintiff may be able to meet his burden on reasonably anticipated use.

In sum, as to the issue of his foot placement, plaintiff here is not like
other injured litigants whose intentional misuses of products precluded
recovery.  He is not like the child who "climbed onto the moving pendulum
of an oil well pump and attempted to 'ride' the pendulum," *Payne v.
Gardner*, 56 So. 3d 229, 230 (La. 2011), nor the teenagers who
"intentional[ly] inhal[ed] . . . the contents of a can of air brush propellant to
produce an intoxicating effect while operating a motor vehicle," *Butz v.
Lynch*, 762 So. 2d 1214 (La. App. 1 Cir. 2000), or even the man in *Kampen*
who placed his head and shoulders beneath the front of the jacked-up car, in

---

[30]     R. Doc. 110-1 at 15.
[31]     *Id.* at 16.

violation of manufacturer warnings, *Kampen*, 157 F.3d at 311.  Unlike those litigants, plaintiff here has submitted ample evidence indicating that his asserted "use" was an involuntary response to an emergency.  Reasonable jurors could therefore conclude that the placement of plaintiff's foot constitutes part of the accident itself, and was not a "use" at all.

Because certain facts could establish that plaintiff's accident arose out of a "reasonably anticipated use" of the forklift, defendant Crown is not entitled to summary judgment on this issue.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Crown's motion for summary judgment on reasonably anticipated use.

New Orleans, Louisiana, this ___5th___ day of January, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

12