# United States Court of Appeals for the Fifth Circuit

No. 22-30053

United States Court of Appeals
Fifth Circuit

**FILED**
April 14, 2023

Lyle W. Cayce
Clerk

Dawson Vallee,

*Plaintiff—Appellant*,

*versus*

Crown Equipment Corporation, *doing business as* Crown Lift Trucks,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-1571

Before Richman, *Chief Judge*, and Elrod and Oldham, *Circuit Judges*.

Per Curiam:[*]

A forklift accident left Dawson Vallee with an amputated leg. Vallee sued Crown Equipment Corporation, the forklift's designer and manufacturer, alleging that a design defect in the forklift caused the accident. The district court granted summary judgment to Crown. We AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30053

## I.

The Crown RM6000 is a stand-up rider forklift designed to lift and move palleted materials in narrow warehouse aisles. To operate it, the driver stands sideways with his hands on the controls and leans against a backrest. The forks are located to the user's right, and the operator compartment is open (*i.e.*, there is no door) to the user's left. To move the forklift, the operator moves the multi-task handle in the desired direction of travel. But movement is impossible unless (1) the operator's left foot is depressing the brake pedal and (2) the operator's right foot is in contact with the sensor pad. Once in motion, the operator can activate the brake by raising his left heel. The forklift can also be slowed or stopped using a technique called "plugging" where the operator pulls the multi-task handle in the opposite direction of the direction of travel.

At the end of a work shift, Dawson Vallee attempted to park a Crown RM6000 forklift. But he lost control of the forklift. Vallee first attempted to "plug" the forklift to stop it and next attempted to apply the brakes by raising his left foot. Neither attempt worked. He testified that the forklift "jerked [him] around" and "tossed [his] leg around the outside of the machine." While his left leg was exposed, the forklift collided with a pole and crushed his left foot between the pole and the forklift. Tragically, this led to the amputation of Vallee's left leg below the knee.

Vallee sued Crown in Louisiana state court. Crown removed to federal court and moved for summary judgment on Vallee's design-defect claims. The district court granted summary judgment to Crown. Vallee now appeals.

## II.

We review a district court's grant of summary judgment and its application of Louisiana law *de novo*. *See Burdett v. Remington Arms Co.*, 854 F.3d 733, 735 (5th Cir. 2017).

2

No. 22-30053

The Louisiana Products Liability Act ("LPLA") provides "the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. § 9:2800.52 *et seq.* Vallee's LPLA claims are design-defect claims. *See id.* § 9:2800.56. To succeed on an LPLA design-defect claim, a plaintiff must put forward an "alternative design" that is both "capable of preventing the claimant's damage," § 9:2800.56(1), and meets the statute's detailed risk-utility analysis, § 9:2800.56(2). The statute's risk-utility analysis asks whether the "likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." § 9:2800.56(2); *see Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590 (5th Cir. 1994).

Section 9:2800.56 requires that an alternative design "be reasonably *specific* and not based on mere speculation." *Gray v. Indus. Plant Maint.*, 2004 WL 1661209, at \*5 (E.D. La. 2004) (emphasis added); *accord Tassin v. Sears, Roebuck & Co.*, 946 F. Supp. 1241, 1250–52 (M.D. La. 1996). Vague alternative concepts and suggestions—lacking in specific detail—do not provide a jury with enough information to determine whether a suggested alternative meets the statute's requirements. *See, e.g.*, *Seither v. Winnebago Indus., Inc.*, 853 So. 2d 37, 41 (La. App. 4th Cir. 2003) (a "mere[] concept" doesn't qualify as an alternative design under the LPLA in the absence of "technical drawings, calculations, scientific study, photographs, or the publication of any engineering principles as to this proposed alternative design"); *Andrew v. Dufour*, 882 So. 2d 15, 25–26 (La. App. 4th Cir. 2004) (concluding a suggested alternative design did not satisfy the LPLA where the evidence in the record only showed that the alternative design *might* have prevented the accident not that it *would* have prevented it); *accord Crowe v. Winn-Dixie of La., Inc.*, 2010 WL 502782, at \*3 (La. App. 1st Cir. 2010).

3

No. 22-30053

III.

Vallee proposed three alternative forklift designs. We hold none meet the LPLA's requirements.

*A Safety Door*. Vallee's experts first opined that the addition of "a safety door on the operator compartment" is a "reasonably available alternative design[]" that "would have virtually eliminated the risk of the injury suffered by" Vallee. Vallee's first expert, Dr. John Meyer, included in his report six different photographs of forklifts with doors manufactured by Crown or its competitors. Meyer stated that these photographs illustrate a "variety of stand-up forklifts displaying a number of different door designs and features." But he did not include specifications regarding the actual designs (*e.g.*, door dimensions, composition, attachment methods, etc.). Vallee's second expert, Dr Richard Ziernicki, stated in his report that Crown "should have provided the forklift with a spring assisted or latching door, or operator guard as standard guarding equipment." He claimed "[l]atching and spring loaded and even interlocked doors, or operator guards were all technologically and economically feasible." Finally, Ziernicki surveyed multiple door designs from Crown's competitors and included several photographs. But, like Meyer, he did not include specifications to accompany the photos in his report.

The LPLA requires more detail. Neither expert included "technical drawings[] [or] calculations" to accompany their suggested alternative addition-of-a-door designs. *Seither*, 853 So. 2d at 41. And neither discussed how their safety door alternatives would actually apply to the specific forklift in question here—the RM6000. *See Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *9–10 (E.D. La. 2003) (requiring expert testimony to show how the suggested alternative design would apply to the "incident"

product in the case). Thus, the proposed safety door alternative doesn't satisfy the LPLA's requirements.

*A Modified Foot Pedal.* Vallee's experts next proposed modifying the foot-pedal braking system on the Crown RM6000. Meyer proposed "reprogramming [] the foot pedals on the floor of the Crown forklift" by "swapping the existing pedals, so that the brake is applied by the right foot, rather than the left." To illustrate this, he included two diagrams of the existing design with arrows labeling where the new pedal would go. He acknowledged that, although he hadn't "addressed any minimal changes in the shape and/or position of the pedals themselves, . . . one could expect that minor ergonomic adjustments could occur to maximize the effectiveness of the new pedal layout." Further, Meyer suggested "[a]nother potential alternative design" of the foot pedals. For this alternative, he pointed to a pushdown brake used by a different forklift manufacturer. Meyer asserted his belief that "the addition of a door is *required* to achieve acceptable risk," whereas the foot-pedal modifications merely "*could* . . . have prevented Mr. Vallee's accident from occurring." (emphasis added). Ziernicki by contrast stated that he would support "[e]ither having the brake under both feet with the operator trained to use the right foot, or having a pushdown brake with placement sensors to encourage proper operator positioning of both feet."

Once again, neither expert included any specific details to support their alternative foot-pedal design concepts. *See Seither*, 853 So.2d at 41 (concluding the absence of "technical drawings" and "calculations" meant a suggested alternative concept did not meet the LPLA's requirements). Meyer's two "diagrams" amounted to pictures of the design that already exists, and he recognized that he did not actually "address[]" the effects of his proposed foot-pedal designs to the RM6000. *See Scordill*, 2003 WL 22427981, at *9–10 (requiring expert testimony to show how the suggested alternative design would apply to the "incident" product in the case). And

5

No. 22-30053

Ziernicki included no detail whatsoever. Thus, the experts' proposed foot-pedal-modification alternatives also do not satisfy the LPLA's requirements.

*A Backrest Sensor.* Finally, Vallee's experts proposed "the addition of a backrest presence sensor that detects when an operator is in t[he] normal position, . . . and ensures that the travel circuit is disconnected when this position is not maintained."

Even assuming Vallee didn't forfeit his backrest-sensor argument by failing to include the design in his pretrial statement, the record is clear that Vallee's back remained against the backrest during the incident. That means he cannot show that any form of backrest sensor was capable of preventing his damage as required by § 9:2800.56(1). ROA.22188–89 (citing Vallee's deposition where he testifies that he had his "back against the backrest" during the incident).

## IV.

Finally, Vallee asserts that the district court erred by requiring him to commit to one alternative design rather than proffering more than one. We disagree that the district court imposed any such requirement. Louisiana law allows plaintiffs to proffer multiple alternative designs. *See, e.g.*, *Johnson v. Black & Decker U.S., Inc.*, 701 So. 2d 1360, 1367 (La. App. 2d Cir. 1997) (considering two). But the plaintiff still must prove that at least one of them meets the requirements of § 9:2800.56. Vallee failed to do so.

AFFIRMED.